# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
## CEDAR RAPIDS DIVISION

ALISON J. ENGLEDOW,

        Claimant,

vs.

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

No. 20-CV-00004-LRR

**REPORT AND
RECOMMENDATION**

—————————————————

Alison J. Engledow ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that she was not disabled. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## I. BACKGROUND

I adopt the facts set forth in the Parties' Joint Statement of Facts (Doc. 11) and only summarize the pertinent facts here. Claimant was born June 25, 1984. (AR[1] at 163.) Claimant has at least a high school education and is able to communicate in English. (*Id.* at 22, 207.) She allegedly became disabled due to depression and anxiety. (*Id.* at 206.) Claimant's onset of disability date was October 31, 2014. (*Id.* at 163.) Claimant

_____

[1] "AR" cites refer to pages in the Administrative Record.

filed an application for DIB on August 29, 2016. (*Id.* at 11.) Her claim was denied originally and on reconsideration. (*Id.* at 92-95, 104-07.) A video hearing was held on August 24, 2018, with Claimant and her attorney, Corbett Luedeman, in Coralville, Iowa and ALJ Michael Comisky and vocational expert ("VE") Marianne Lumpe in Kansas City, Missouri. (*Id.* at 29-61.) Claimant and the VE testified. (*Id.* at 36-60.) The ALJ issued an unfavorable decision on November 27, 2018. (*Id.* at 11-23.)

Claimant requested review and the Appeals Council denied review on November 5, 2019. (*Id.* at 1-5.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On January 13, 2020, Claimant timely filed her complaint in this Court. (Doc. 3.) On August 4, 2020, all briefing was completed and the Honorable Linda R. Reade referred the case to me for a Report and Recommendation.

## II. *DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant has a disability when, due to physical or mental impairments, the claimant

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work, lack of options in the local area, technological changes in a particular

industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 416.972(a),(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 416.920(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987) (quoting 20 C.F.R. §§ 404.1521(b), 416.921(b)). These include

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple

instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). RFC is what the claimant can still do despite his or her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (citing 20 C.F.R. §§ 404.1545(a), 416.945(a)). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 416.960(b)(1). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 416.920(a)(4)(v), 416.960(c)(2). The ALJ must show not only that the claimant's

4

RFC will allow the claimant to do other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

## A. The ALJ'S Findings

The ALJ made the following findings at each step of the five-step process regarding Claimant's disability status. As a threshold matter, the ALJ found that Claimant met the insured status requirements of the Social Security Act through December 31, 2019. (AR at 13.)

At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since her alleged onset of disability date of October 31, 2014. (*Id.* at 14.)

At step two, the ALJ found that Claimant suffered from the following severe impairments: degenerative disc disease, asthma, obesity, carpal tunnel syndrome, affective disorder, and anxiety disorder. (*Id.*) The ALJ found Claimant's hypertension, diabetes mellitus, gastroesophageal reflux disease, polycystic ovary syndrome, fatty liver, hyperlipidemia, and acute otitis externa to be nonsevere impairments. (*Id.*)

At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or equaled a presumptively disabling impairment listed in the regulations, either when considered singly or in combination. (*Id.*)

The ALJ evaluated Claimant's claims under listings 1.04 (disorders of the spine), 3.03 (asthma), 12.04 (depressive, bipolar and related disorders), and 12.06 (anxiety and obsessive-compulsive disorders). (*Id.* at 14-16.) The ALJ also considered Claimant's "extreme level of obesity," with a BMI of 45.4, and asthma when crafting the RFC and reduced the RFC to the performance of light work with additional postural and environmental limitations in consideration of those impairments. (*Id.* at 18, 21.)

At step four, the ALJ found that Claimant had the following RFC:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift or carry 20 pounds occasionally and 10 pounds frequently; can push or pull in the limits

5

for lifting and carrying; can occasionally climb ramps and stairs; cannot climb ladders, ropes, or scaffolds in a workplace setting; can occasionally balance, stoop, kneel, crouch, and crawl; can stand or walk for six hours in an eight-hour workday; can sit for six hours in an eight-hour workday; should avoid concentrated exposure to high temperatures and inhaled pulmonary irritants such as fumes, odors, dust, gases, and poor ventilation; can work at moderate noise levels; can understand, remember, and carry out moderately complex work instructions and tasks at a [sic] SVP 4 level; can have occasional contact with coworkers, supervisors, and the general public; and should not work with the general-public as a primary job duty.

(*Id.* at 16.) The ALJ also found that Claimant was unable to perform her past relevant work. (*Id.* at 21.) At step five, the ALJ found there were jobs that existed in significant numbers in the national economy Claimant could perform, including production assembler, hand packager, and sub-assembler. (*Id.* at 23.) Therefore, the ALJ concluded that Claimant was not disabled. (*Id.*)

## B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Moore*, 572 F.3d at 522. "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). The decision is not outside that zone of choice simply because the court might have reached a different decision. *Id.* (citing *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001)); *Moore*, 572 F.3d at 522 (holding that the court cannot reverse an ALJ's decision merely because substantial evidence would have supported an opposite decision).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers both evidence that supports the ALJ's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

## III. DISCUSSION

Claimant alleges the ALJ committed reversible error by (A) not recognizing and obtaining an explanation for the inconsistencies between the vocational expert's testimony and the characteristics of the jobs identified in the *DOT* and *SCO*; (B) failing to provide good reasons for the weight afforded to her treating physician's opinions; (C) failing to provide good reasons for the weight afforded to the examining physician's opinions; (D) including "at a SVP 4 level" limitation in the RFC; and (E) improperly evaluating her subjective complaints.

### A. Whether There are Inconsistencies Between the VE's Testimony and the Characteristics of the Jobs Identified in the DOT and SCO

VE testimony that conflicts with the *Dictionary of Occupational Titles* ("*DOT*") and its companion publication the *Selected Characteristics of Occupations* ("*SCO*") (collectively for this discussion, "the *DOT*") "does not constitute substantial evidence upon which the Commissioner may rely to meet the burden of proving the existence of other jobs in the economy a claimant can perform." *Moore v. Colvin*, 769 F.3d 987, 990 (8th Cir. 2014) (addressing *DOT*) (quotation omitted); *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014) (addressing *DOT* and *SCO*). "If there is an 'apparent

7

unresolved conflict' between VE testimony and the *DOT*, the ALJ must 'elicit a reasonable explanation for the conflict' and 'resolve the conflict by determining if the explanation given [by the expert] provides a basis for relying on the [VE] testimony rather than on the *DOT* information.'" *Id.* at 989-90 (quoting SSR 00-4p, 2000 WL 1898704, at *2-4) (brackets in original).

> SR 00-4p states:
>
>> When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the *DOT*. In these situations, the adjudicator will:
>> -Ask the VE . . . if the evidence he or she has provided conflicts with information provided in the *DOT*; and
>> -If the VE's . . . evidence appears to conflict with the *DOT*, the adjudicator will obtain a reasonable explanation for the apparent conflict.
>
> SR 00-4p. Additionally, SSR 00-4p requires the ALJ to "explain in the determination or decision how he or she resolved the conflict." *Id.* Thus, SSR 00-4p essentially creates a tripartite duty upon the ALJ to inquire, resolve, and explain any conflict between the *DOT* and testimony from a VE.

*Closson v. Astrue*, No. C 06-4095-MWB, 2008 WL 504013, at *9 (N.D. Iowa Feb. 21, 2008). Thus, it is clear that an ALJ must resolve any apparent conflicts between a VE's testimony and the *DOT* before relying on the VE's testimony. *See Thomas v. Berryhill*, 881 F.3d 672, 677-78 (8th Cir. 2018).

Claimant argues that the ALJ did not resolve the apparent conflict between her RFC, which limits her to "work at a moderate noise level" (AR at 16) and the jobs of production assembler and hand packager, which are "loud" jobs per the *DOT*. (Doc. 12 at 4-5.)

Claimant is correct. Both the RFC and hypothetical question included a limitation to working at moderate noise levels. (AR at 16, 57.) The ALJ relied on the VE's testimony to deny Claimant benefits. (*Id.* at 23.) Two of the three jobs the VE identified did not comply with this restriction and thus conflicted with the *DOT*. *See* Assembler, Production, *DOT* 706.687-010, 1991 WL 679074 ("Noise Level: Level 4—Loud"); Inspector and Hand Packager, *DOT* 559.687-074, 1991 WL 683797 ("Noise Level: Level 4—Loud").

However, "mistaken" VE recommendations do not necessarily "devalue" the rest of the VE's opinion. *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). An ALJ may rely on VE testimony as long as the VE identified other work the claimant can perform that satisfies the claimant's RFC. *See id.*; *O'Connell v. Saul,* No. 18-CV-2072-KEM, 2019 WL 4784613, at *12 (N.D. Iowa Sept. 30, 2019) (unpublished) (inconsistency between VE testimony and *DOT* harmless if at least one job remains in significant numbers in national economy that claimant can perform that is consistent with *DOT* and RFC). Here, the VE identified the job of sub-assembler (AR at 23, 59), which involves only moderate noise levels. *See* Sub-assember, *DOT* 729.684-054, 1991 WL 679729 ("Noise Level: Level 3—Moderate"). There are 90,000 sub-assembler jobs in the national economy. (AR at 23, 59.) This is a significant number of jobs. *See Weiler v. Apfel*, 179 F.3d 1107, 1110-11 (8th Cir. 1999) (32,000 jobs significant number of jobs). Thus, I **recommend** the District Court affirm the ALJ's decision on this issue.

## B.     *Whether the ALJ Properly Weighed the Opinion Evidence*

Claimant argues that the ALJ did not properly weigh the opinion evidence of her treating physician Sunny Kim, M.D. or the examining physician Stanley Mathew, M.D.

### 1.     *Relevant Background Facts*

Claimant sustained a back injury at work on April 28, 2012 and first sought medical attention for the injury two days later on April 30, 2012. (Doc. 11 at 4.) She

received treatment for her injury during the years prior to her alleged onset of disability date of October 31, 2014.  Claimant continued to work until October 31, 2014.  (AR at 206.)  Claimant filed her disability claim on August 29, 2016.  (*Id*. at 11.)  She continued to receive treatment for back problems during the relevant time period.  (*Id*. at 17.)

### 2. *Opinion of Treating Physician Sunny Kim, M.D.*

On July 31, 2013, Dr. Sunny Kim opined that Claimant had a permanent back impairment "which is ratable pursuant to the AMA Guide to the Evaluation of Permanent Impairment, 5th Edition.  She qualifies for an impairment rating of 5% of the whole person using criteria for rating impairment to the lumbar spine injury. . . ."  (AR at 460.)  Dr. Kim opined that Claimant would benefit from the following relevant work restrictions:

> No repetitive bending, lifting or twisting at the waist; no lifting greater than 20 pounds from floor to waist; no carrying greater than 35 pounds at the waist.  Allow for alternation [sic] between sit, stand and walking for patient comfort throughout the day.

(*Id*.)

> The ALJ gave the opinion little weight for the following reasons:

> Dr. Kim's opinion was in response to an unknown letter requesting specific information. Further, it was pertaining to a different disability program, the claimant's worker's compensation case. Several of the statements are less restrictive than the residual functional capacity stated above. Additionally, it was made significantly prior to the alleged onset of disability about an injury that occurred even more remotely than that. Finally, the more restrictive recommendations are inconsistent with the record as a whole. Specifically, with the mild-to-moderate imaging, her normal gait, her typically normal range of motion, her self-reported lack of limitation with standing and sitting, and her continued activities. (Exhibits 7E; l0E; 9F-17F).

(*Id*. at 21.)

### a. Claimant's Arguments

Claimant argues that the ALJ did not provide good reasons for the weight he afforded Dr. Kim's opinion. Claimant apparently takes issue with the ALJ's failure to include a sit/stand/walk option in the opinion. (Doc. 12 at 8 ("These opinions included the following that was not accounted for in the ALJ's RFC determination: 'allow for alterternation [sic] between sit, stand and walking for patient comfort throughout the day.' (TR 460).").) Claimant first asserts that the ALJ's rationale that worker's compensation is a different disability program "makes no sense" because Dr. Kim's opinions are the type of opinions that are useful for determining a claimant's RFC. (*Id.* (citing 20 C.F.R. § 404.1527(a)(1) (defining "medical opinions")).)

Claimant next argues that "remoteness" was also not a good reason to assign the opinion such little weight because Dr. Kim's opinion related back to 2013 when he found Claimant had reached "maximum medical improvement" from her back injury. (*Id.* at 9 (citation omitted).) Claimant also argues that Claimant's employer did not honor Dr. Kim's restrictions and by October 2014, Claimant found she could no longer work because she was "mentally and physically drained." (*Id.* (citing AR at 41 (Claimant's testimony that employer did not honor restrictions); 206 (Claimant's SSA disability report stating she is "[u]nable to continue working due to depression and anxiety disease affecting my work and hurting my back due to my depressive moods."); 616 (Aug. 2014 primary care provider treatment note stating "Has increased stress going on—might be quitting her job soon-work comp/back issue.").)

Claimant also argues that the ALJ's statement that Dr. Kim's opinions are not consistent with the record as a whole are not supported. She avers that the ALJ relied on his own inferences regarding Claimant's imaging, normal gait, and typically normal range of motion on examination. (*Id.* at 10 (citing *Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017).) Claimant also asserts that the ALJ did not discuss that her back

was generally tender to palpation on examination during the relevant time period. (*Id.* (citations omitted).) Claimant further argues that "throughout the record complained of her depression and anxiety worsening since her back injury, making the ALJ's reliance on his own inferences particularly troubling." (*Id.* (citing AR at 523; *Delrosa v. Sullivan*, 922 F.2d 480, 486-87 (8th Cir. 1991).) Claimant finally argues that the ALJ did not explain which of her activities were inconsistent with Dr. Kim's opinion. (*Id.* at 11.)

### b. Legal Standard for Evaluating Dr. Kim's Opinion

"It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001) (noting internal citations omitted)). An ALJ must "give good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). "A treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record as a whole.[2] *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010) (quotation omitted). "Even if the treating physician's opinion is not entitled to controlling weight, it should not ordinarily be disregarded and is entitled to substantial weight." *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015) (citation and brackets omitted). However, a treating physician's opinion can be given limited weight if it contains only conclusory statements, contains inconsistent opinions "that undermine the credibility of such opinions," is inconsistent with the record, or if other medical opinions are supported by "better or more thorough medical evidence." *Id.* (citations omitted).

---

[2] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. *See* 20 C.F.R. § 404.1527. However, Claimant's claim was filed on August 29, 2016. Thus, the old regulations apply. *See id.*

A treating physician's statement that is "not supported by diagnoses based on objective evidence" will not support a finding of disability. *Edwards v. Barnhart,* 314 F.3d 964, 967 (8th Cir. 2003) (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)). If the opinion is "inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight." *Id.* (citation omitted).

When a treating physician's medical opinion is not given controlling weight, the following factors will be examined to determine the weight to give the opinion: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors. 20 C.F.R. § 404.1527(c)(2).

> ### c.    *Analysis*

Claimant appears to assert arguments based on two of the Section 404.1527(c)(2) factors: consistency, and other factors. I will first address "other factors."

> ### i.    *Other Factors*

Claimant argued that the ALJ's statement that Dr. Kim's opinion pertained to a different disability program—worker's compensation—made "no sense for rejecting Dr. Ki's permanent work restrictions opinions which are exactly the type of opinions that are useful for determining a claimant's residual functional capacity." (Doc. 12 at 8.)

The ALJ did not err in relying on this as part of the rationale for assigning Dr. Kim's opinion little weight. An ALJ may consider an opinion that was part of a claimant's workers' compensation claim. *See Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000); *Brown v. Saul*, No. C18-3071-LTS, 2020 WL 1467044, at *7 (N.D. Iowa Mar. 26, 2020). However, opinions related to a workers' compensation claim are not binding on the Social Security Administration. *See Loeffler v. Massanari*, 23 F. App'x 605, 606 (8th Cir. 2001) (unpublished) (citing 20 C.F.R. §§ 404.1504; 416.904); *Brown*, 2020 WL 1467044, at *7. Moreover, to the extent Claimant argues that the ALJ solely

relied on this reasoning to dismiss Dr. Kim's functional restrictions, I find that is not the case. The ALJ clearly discussed Claimant's functional restrictions throughout the opinion. (AR at 17-21.) He specifically determined that some of Dr. Kim's restrictions were less restrictive than the RFC and that the more restrictive ones were not consistent with the record as a whole. Thus, the ALJ obviously parsed out portions of Dr. Kim's opinion for different treatment and merely relied on the difference between workers' compensation and Social Security regarding the "impairment rating of 5% of the whole person" portion of Dr. Kim's opinion.

Claimant also argues that the ALJ inappropriately relied on the remoteness of Dr. Kim's opinion. This argument, too, is without merit. The date of evidence is a relevant factor for the ALJ to consider. *See Rogers v. Chater*, 118 F.3d 600, 602 (8th Cir. 1997) (ALJ entitled to discount opinion of treating physician issued opinion "years removed" from time period relevant to Social Security application and treatment); *see also Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008) (discounting evidence from before alleged onset of disability date); *Keyser v. Colvin*, No. C12-3050-MWB, 2013 WL 2444194, at *14 (N.D. Iowa May 31, 2013) (evidence before alleged onset of disability date irrelevant), *R. & R. adopted*, 2013 WL 3243622 (N.D. Iowa June 26, 2013).

Thus, these factors do not provide a reason to assign the opinion more weight.

### ii. Consistency

"Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4). The rest of Claimant's arguments seem to support Claimant's assertion that the ALJ's assessment of Dr. Kim's opinion was not consistent with the record as a whole.

Claimant asserts that her former employer did not honor Dr. Kim's restrictions, which led Claimant to be "mentally and physically drained." (Doc. 12 at 9.) I suspect

Claimant proffers this argument as a way to impress upon the Court what could befall her in the workplace if Dr. Kim's restrictions are not adopted in total. However, as the ALJ stated, the RFC in this case is *more* restrictive than certain aspects of Dr. Kim's opinion. Thus, to the extent the RFC is more restrictive than Dr. Kim's opinion, Claimant's argument is without merit. The ALJ also found Dr. Kim's more restrictive limitations inconsistent with the record as a whole. (AR at 21.)

Claimant focuses on Dr. Kim's opinion that she should be allowed to alternate between sitting, standing, and walking throughout the day. (Doc. 12 at 9.) However, the ALJ noted that imaging of Claimant's back during the relevant time period showed only mild to moderate findings:

> An MRI of her lumbar spine in June 2016 showed generally mild multilevel degenerative changes, disc bulges, herniations with moderate central and left posterior disc protrusion mildly indenting the left ventral thecal sac, mild bilateral facet arthropathy, and some foraminal narrowing. An x-ray of the lumbosacral spine from August 2016 showed mild anterior wedging, mild multilevel degenerative disc disease, and no abnormal motion with flexion, extension, or right or left lateral bending.

(AR at 17 (citing AR at 574, 1267) (internal citations omitted).) Moreover, although Claimant testified that she can only sit for 20 minutes at a time (*Id.* at 43), she denied any problems with sitting or standing in her October 2016 and April 2017 function reports. (*Id.* at 228, 249.)

Furthermore, the ALJ also noted that Claimant had generally normal physical examinations. Contrary to Claimant's argument, the ALJ acknowledged that Claimant "occasionally exhibited some tenderness in the lumbar paraspinal muscles and into her left hip," but then noted that at those times, Claimant still typically had a normal range of motion in the musculoskeletal system with no edema and usually no myalgias or arthralgias and a normal gait. (*Id.* at 17, 21 (citing, *e.g.*, AR at 533, 538, 545, 549,

554, 558, 686, 730, 1034, 1279, 1291).)  There is no indication that Claimant needed to alternate between sitting and standing in these treatment notes.

Claimant relies on *Combs v. Berryhill*, 878 F.3d 642 (8th Cir. 2017) to argue that the ALJ "rel[ied] on his own inferences as to the relevance of Ms. Engledow's imaging, her normal gait, and her typically normal range of motion on exam."  (Doc. 12 at 10.)  In *Combs*, the court held that the ALJ did not fulfill his duty to fully and fairly develop the record because the ALJ relied "on his own inferences as to the relevance of the notations 'no acute distress' and 'normal movement in all extremities' [in the treatment notes of the claimant's treating physician] when determining the relative weight to assign" to conflicting reviewing physicians' opinions.  878 F.3d at 647.  *Combs* reasoned that in light of the claimant's history of rheumatoid arthritis, the relevance of the two notations was unclear and remand was necessary for the ALJ to investigate the claimant's ability to function in the workplace.  *Id.*

Here, however, the ALJ did not rely on his own interpretation of cryptic treatment notes when assigning weight to competing opinions.  This case does not involve cryptic treatment notes.   Rather, as the ALJ stated, Claimant's objective medical tests showed only "mild to moderate objective imaging findings," normal gait, range of  motion, no edema, and usually no myalgias or arthralgias.   (AR at 17.)   These were not interpretations of cryptic treatment notes, but rather recitations of objective clinical findings.  The ALJ was required to weigh these findings when deciding if Claimant was disabled.  *See Brachtel v. Apfel*, 132 F.3d 417, 420 (8th Cir. 1997) ("it is properly left to the fact-finder to weigh the evidence provided by examining professionals").

 The ALJ further noted that Claimant's treatment has generally been conservative.  (*Id.* at 18.)  A neurosurgeon did not recommend surgery.  (*Id.* (citing AR at 556).)  Claimant has done physical therapy and had steroid injections, which only provided relief for about two weeks.  (AR at 18, 537.)  However, a chiropractor opined that Claimant

16

would likely make a good recovery with few residuals and Claimant showed improvement after just a few sessions with some occasional relapses. (AR at 18 (citing Ex. 16F (AR 1208-71).) Chiropractic records cited by the ALJ show Claimant improved after the second session and continued to improve throughout her treatment. (*Id*. at 1217.) At most sessions, Claimant either stated that she was feeling the same or had improved since her last session. When she felt worse, she was usually able to tie the pain to an activity such as being ill, helping her father move boxes, playing with the cat, or falling. (*Id*. at 1226-27, 1243-44. *But see id*. at 1254-60 (lower back pain of unknown origin).) On September 28, 2017, Claimant reported to her chiropractor that she drove to and from St. Louis in one day and that her only residual discomfort was that her hips were sore because of it, "but not worse than before." (*Id*. at 1238.) Claimant specifically noted an increase in her ability to sit for "much longer" periods of time during the course of her treatment and to bend over and lift with decreased pain. (*Id*. at 1232, 1242-43.) The ALJ also noted that in addition to the improvement Claimant received from chiropractic treatment, it had also been recommended that Claimant "lose weight, take Gabapentin and over the counter pain relief medication, heat/ice, and exercise." (*Id*. at 18 (citing AR at 537, 559, 687).) Such a conservative course of treatment can weigh against a claim of disabling impairment. *See Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015).

Claimant argues that the ALJ failed to consider that her perception of pain is exacerbated by her psychological impairments and that "throughout the record [she] complained of her anxiety and depression worsening since her back injury, making the ALJ's reliance on his own inferences particularly troubling." (Doc. 12 at 10 (citing *Delrosa*, 922 F.2d at 486) Claimant, however, cites only one page "throughout the record" that supports this argument.

This page contains a statement by Dr. Stanley Mathew who conducted an independent physical examination of Claimant on July 3, 2014, apparently in conjunction

with her worker's compensation claim. (AR at 520-23.) Dr. Mathew noted, "[T]he patient does explain that she has worsening depression since her work injury, which is very common in patients with chronic pain." (*Id.* at 23.) This statement is not helpful to Claimant for four reasons. First, Dr. Kim did not evaluate Claimant's mental impairments. Thus, while the ALJ recognized that Claimant's physical health was one of the situational stressors that contributed to her mental health symptoms (AR at 19 (citing AR at 454, 532, 592, 834, 875, 1127)), a discussion of Claimant's mental health is not particularly relevant to the evaluation of Dr. Kim's opinion. Second, a single citation to a report written almost four months prior to Claimant's alleged onset of disability date by a one-time examining physician for a worker's compensation claim can only lead to the conclusion that this argument is underdeveloped. This is especially true when Dr. Mathew's comment is not based on any clinical testing or his own observations, but is merely a recitation of Claimant's subjective complaints and a general statement of fact without a medical opinion as to whether Claimant falls into the category of patients to whom this applies. *See Aulston v. Astrue*, 277 F. App'x 663, 664-65, 2008 WL 2066019 (8th Cir. 2008) (declining to address underdeveloped argument) (citing *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1320 (Fed. Cir. 2006) (collecting cases for proposition that undeveloped arguments are waived)); *Rotskoff v. Cooley*, 438 F.3d 852, 854–55 (8th Cir. 2006) (considering undeveloped argument "abandoned for failure to provide any reasons or arguments for his contentions") (quotation omitted). *see also ASARCO, LLC v. Union Pac. R.R. Co.,* 762 F.3d 744, 753 (8th Cir. 2014) ("Judges are not like pigs, hunting for truffles buried in briefs or the record.") (noting internal quotation marks omitted); *Perrigo v. Colvin*, No. 12-CV-4102-DEO, 2014 WL 1234479, at *7 n.3 (N.D. Iowa Mar. 25, 2014) (same) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

Third, the ALJ considered Claimant's physical and mental impairments, both alone and in combination with each other, and concluded they did not result in a greater degree of impairment than that reflected in the RFC. (AR at 14.) The ALJ cited extensively in his opinion and discussed both Claimant's severe and nonsevere impairments in detail. (*Id.* at 15-21.) That the ALJ divided his analysis into separate discussions of Claimant's physical and mental impairments to make the analysis easier to follow does not mean the ALJ did not consider the combined effects of those impairments, especially when, as discussed above, the ALJ noted that Claimant's physical problems sometimes contributed to her mental health issues. *See Martise v. Astrue*, 641 F.3d 909, 924 (8th Cir. 2011) (citing *Browning v. Sullivan,* 958 F.2d 817, 821 (8th Cir.1992) ("holding that ALJ properly considered whether claimant's impairments in combination were disabling by 'separately discussing [the claimant's] physical impairments, affective disorder, and complaints of pain, as well as her daily level of activities'") (brackets in original).

Finally, Claimant's reliance on *Delrosa* is misplaced. In *Delrosa*, the ALJ said he was "unable to find any support" for the claimant's anxiety and depression diagnoses in spite of multiple notations in the record and the claimant's daily use of Librium. 922 F.2d at 484-85. Here, the ALJ not only acknowledged Claimant's anxiety and affective disorder, he found them to be severe impairments and made accommodations for them in the RFC. (AR at 14, 16, 19.) And, as stated above, Claimant does not direct the Court to pages in the record that the ALJ overlooked in his analysis. *See Singer v. Harris*, 897 F.3d 970, 980 (8th Cir. 2018) (holding that when plaintiff did not direct the court to a place in the record where it could find alleged errors, the court would only consider the arguments that were supported by appropriate citations) (citing *Manning v. Jones*, 875 F.3d 408, 410 (8th Cir. 2017)).

Lastly, the ALJ assigned proper weight to Dr. Kim's opinion based on Claimant's self-reported lack of sitting and standing limitations and Claimant's activities. (AR at 17-18, 21, 228, 249.) As the ALJ noted, Claimant helped her father clean out his home; routinely swam and walked for exercise; was a stay-at-home mother/caretaker who did household chores such as laundry (although I note that she testified her husband carried full laundry baskets down to the basement for her (*Id.* at 54)); and did manipulative activities such as quilting. (*Id.* at 18 (citing AR at 547, 556, 683, 728, 974, 1031, 1045, 1089, 1208-71, 1279, 1292).) Of particular note in the citations by the ALJ are pages where Claimant told healthcare providers she was exercising at least 150 minutes-per-week and walking and swimming for exercise. (*Id.* at 547, 556, 683, 974, 1031, 1045, 1089.) These statements undermine Claimant's testimony that she has no energy to do chores or leave the house, and that she spends her days sleeping and lying on the couch watching television and playing games or looking at Facebook on her phone. (*Id.* at 49-53; Doc. 12 at 11 (citing AR at 223-29).)

Claimant also avers that the ALJ "did not explain what activities were inconsistent with Dr. Kim's opinions" and "that a claimant should not need to prove he or she is bedridden to be found disabled." (Doc. 12 at 11.) The ALJ held that Dr. Kim's recommendations that are more restrictive than the RFC were inconsistent with, among other things, Claimant's "continued activities." (AR at 21.) The ALJ listed the above activities that he found incompatible with Claimant's claim of disabling limitations when explaining his reasoning for his step four RFC finding. (AR at 17-18.) The ALJ's evaluation of Dr. Kim's opinion was also included in the ALJ's step four explanation for his RFC finding. (*Id.* at 21.) The ALJ cited the same exhibits in support of his statement regarding Dr. Kim's opinion and the statement about Claimant's activities being incompatible with disabling limitations, although without pinpoint citations, which supports the conclusion that the ALJ relied on the same activities to support the

conclusions.[3]  Moreover a common-sense plain reading of the decision leads to that conclusion.  Both parts of the decision that are at issue were related to the ALJ's step four reasoning, which made it obvious to what activities the ALJ was referring.  It may have been preferable had the ALJ restated the activities in the paragraph related to Dr. Kim's opinion rather than providing citations, but that omission does not even rise to the level of a writing deficiency.  It was simply a writing choice since the reader could read the citations to understand what activities were referenced, on the off-chance that the reader did not understand that the ALJ was referring to the list of activities on pages 17-18 of the decision.

Lastly, Claimant claims that helping her father clean his home, one of the activities cited by the ALJ, actually caused her pain.  (Doc. 12 at 11 (citing AR 1227 (back pain worsened when she helped her father move box).)  This July 27, 2017 treatment note cited by Claimant is from her chiropractor.  By August 24, 2017, Claimant's ability to bend over "improved with decrease in symptoms with this complaint when she works." (AR at 1231.)  By August 31, 2017, Claimant reported improvement and that she could sit a much longer period of time.  (*Id.* at 1232.)  Thus, although Claimant injured her back, with proper chiropractic care, she was able to recover.  This is consistent with the ALJ's assessment of Claimant's chiropractic treatment: "Claimant showed improvement after a few sessions with some occasional relapses."  (AR at 18 (citing Ex. 16F (AR 1208-71).)

Contrary to Claimant's assertion, the ALJ did not require her to be bedridden in order to qualify for benefits.  The ALJ evaluated the record as a whole and determined that the record was not in concert with the limitations contained in Dr. Kim's opinion,

---

[3] The ALJ also included a citation to Exhibit 9F, which is a treatment note for sinusitis.  (AR at 524-28.)  There does not appear to be any relevant information in this treatment note.

even if Claimant is able to point to limited evidence that might support the opposite conclusion. "We may not reverse that decision simply because we would have reached a different conclusion than [the Commissioner] or because substantial evidence supports a contrary conclusion." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017), *as corrected* (Apr. 25, 2017) (brackets in original; citations omitted); *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.") (citation omitted). The ALJ provided good reasons for his decision and cited extensively to the record to support his conclusions. Thus, this case can be distinguished from *Lucus v. Saul*, cited by Claimant (Doc. 12 at 11), because the ALJ in that case failed to give good reasons for assigning a treating physician's opinion partial weight. 960 F.3d 1066, 1069 (8th Cir. 2020).

Therefore, I find that this factor does not weigh in favor of giving the opinion more weight.

### iii. *Recommendation*

I **recommend** the District Court affirm the ALJ's decision on this issue.[4]

### 3. *Opinion of Examining Physician Stanley Mathew*

On July 3, 2014, Dr. Stanley Mathew examined Claimant in conjunction with her worker's compensation claim. (AR at 520-23.) Among other things, Dr. Mathew opined that Claimant should avoid "prolonged standing, walking, sitting, squatting. . . . (*Id.* at 523.) Claimant takes issue with the ALJ's failure to include that limitation in the RFC,

---

[4] Claimant does not seek to salvage Dr. Kim's opinion based on any other 20 C.F.R. § 404.1527(c) factor and I do not find that the other factors, on the whole, weigh in favor of giving the opinion more weight or in favor of remand.

arguing that the limitation is "similar to what Dr. Kim had found earlier and [was] also not accounted for in the ALJ's RFC determination." (Doc. 12 at 14.)

The ALJ gave the opinion little weight for the following reasons.

> His opinion was pertaining to a different program's standards for disability and pertains to injuries from significantly prior to the alleged onset date of disability. However, many of his recommended restrictions are less restrictive than as stated in the residual functional capacity. Regardless, the more restrictive limitations are inconsistent with the record as a whole. Specifically, with the mild-to-moderate imaging, her normal gait, her typically normal range of motion, her self-reported lack of limitation with standing and sitting, and her continued activities. (Exhibits 7E; l0E; 9F-17F).

(AR at 21.)

### a. *Claimant's Arguments*

Claimant argues that disregarding Dr. Mathew's opinions because they were offered in the context of a worker's compensation claim was "nonsense." (Doc. 12 at 14-15.) He next asserts that "[t]he ALJ's statements concerning the objective medical evidence and Ms. Engledow's activities is flawed for the same reasons previously discussed above relating to the ALJ's evaluation of Dr. Kim's opinion. . . . These rationales were not good reasons for the weight afforded to Dr. Mathew's opinions." (*Id.* at 15.) Claimant also argues that the ALJ is "not fairly interpreting the record" regarding her "self-reported lack of limitation with standing and sitting." (*Id.*) Claimant asserts that she explained during her functional capacity evaluation that "standing in one location for extended periods of time aggravated her pain and she estimated she could walk for 30 minutes at a time, stand for 10 minutes at a time, and sit for 30 minutes at a time. (TR 511-12). Ms. Engledow's disability report pointed out her standing and sitting issues. (TR 232)." (*Id.*) Claimant further argues that she explained to her primary care physician that sitting and standing were among the activities that aggravated her back

pain.  (*Id.* (citing AR at 556).)  She also testified that she could not hold a job due to sitting, standing, walking, and anger management problems.  (*Id.* (citing AR at 37-38).)  Thus, Claimant asserts that the ALJ did not provide good reasons for the weight assigned to Dr. Mathew's opinion.  (*Id.*)

### b. Legal Standard for Evaluating Dr. Mathew's Opinion

Unless a treating source's medical opinion is given controlling weight under 20 C.F.R. § 404.1527(c)(2), the same factors must be considered in deciding the weight to give the medical opinion of an examining medical source: (1) examining relationship, (2) supportability, (3) consistency, (4) specialization, and (5) other factors.  20 C.F.R. § 404.1527(c).

### c. Analysis

Because Claimant cites evidence from different places throughout the record, I interpret Claimant's argument as a consistency argument.  "Generally, the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." 20 C.F.R. § 404.1527(c)(4).

For the reasons stated above in the discussion related to Dr. Kim's opinion, I find that the ALJ's reasoning pertaining to different programs' standards for disability; the opinion's relation to injuries that occurred significantly prior to Claimant's alleged onset of disability date; and that Dr. Mathew's more restrictive limitations were inconsistent with the record as a whole, including unremarkable objective and diagnostic findings, Claimant's continued activities and self-reported lack of limitations with standing and sitting also support the ALJ's decision related to Dr. Mathew's opinion.

Claimant, however, does cite different evidence related to Dr. Mathew's limitation on "prolonged" sitting and standing.  Claimant cites a February 12, 2014 functional capacity evaluation in which she told the evaluator that standing in one location for extended periods of time aggravated her symptoms, that she estimated she could walk for

30 minutes, stand for ten minutes, and sit for 30 minutes. (AR at 511-12.) Claimant also cites an undated disability report her counsel submitted to SSA on her behalf that says she "frequently shifts positions between sitting, standing, and walking." (*Id.* at 232.) On September 13, 2016, Claimant told her primary care provider that sitting and standing were among the activities that aggravated her back pain. (*Id.* at 556.) Claimant also testified that she could not hold her previous job at Walmart due, in part, to sitting, standing, and walking problems. (*Id.* at 37-38.)

The scattered pages Claimant cites mostly predate Claimant's October 2016 and October 2017 function reports, in which she denied problems with standing and sitting. The ALJ relied, in part, on Claimant's self-reported lack of limitations in standing and sitting for giving Dr. Mathew's opinion little weight. However, as discussed above, the ALJ relied on other evidence in the record as a whole for the weight he assigned to Dr. Mathew's opinion, in spite of some conflicting evidence in the 1296-page administrative record. *See Fentress*, 854 F.3d at 1021 ("While it is not surprising that, in an administrative record which exceeds 1,500 pages, Fentress can point to some evidence which detracts from the Commissioner's determination, good reasons and substantial evidence on the record as a whole support the Commissioner's RFC determination and the decision to discount Dr. Waters's opinion.").

Accordingly, I **recommend** the District Court affirm the ALJ's decision on this issue.[5]

---

[5] Claimant does not challenge the weight given Dr. Mathew's opinion based on any other 20 C.F.R. § 404.1527(c) factor and I do not find that the other factors, on the whole, weigh in favor of giving the opinion more weight or in favor of remand.

*C.*     ***Whether the RFC's Inclusion of Tasks at SVP 4 Level[6] was Supported by Substantial Evidence***

On December 21, 2106, Sarah Anthoney, Ph.D. reviewed Claimant's records for the state agency and determined that Claimant had the following limitations in the Part B Criteria of the Listings: mild restrictions in activities of daily living and moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (AR at 66.) Dr. Anthoney concluded that "[t]he preponderance of the evidence supports that [Claimant] has retained the ability to perform and sustain 3-4 step tasks, if she can work independent of others as needed." (*Id.* at 72.) On April 27, 2017, Scott Schafer, Ph.D., found that Claimant had the following limitations in the part B Criteria of the Listings: moderate limitations in the ability to understand, remember or apply information; interact with others; and concentrate, persist, or maintain pace. (*Id.* at 82.) Dr. Schafer found Claimant had mild limitations in the ability to adapt or manage herself. (*Id.*) Dr. Schafer affirmed the part of Dr. Anthoney's opinion stating that Claimant "retained the ability to perform and sustain 3-4 step tasks, if she can work independent of others as needed." (AR at 88.)

The ALJ's entire discussion of the state agency reviewing consultant opinions is repeated here because there seems to be a fundamental misunderstanding of the weight the ALJ assigned to the opinions.

First, the State agency opinions are given some weight. (Exhibits 2A; 4A). Although the doctors did not examine the claimant nor review the most

---

[6] "SVP" refers to Specific Vocational Preparation, defined in Appendix C of the *Dictionary of Occupational Titles* as being "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." A position with an SVP of 4 requires vocational preparation of three to six months. . . . *See Dictionary of Occupational Titles,* Appendix C. *Henning v. Colvin*, 943 F. Supp. 2d 969, 988 n.2 (N.D. Iowa 2013).

26

recent records, their opinions that the claimant can engage in a range of light work are consistent with the material medical evidence in the file, supported by the notes from treating and examining medical professionals of record and consistent with the evidentiary requirements of Social Security disability programs. Specifically, the mild to moderate imaging for the claimant's back, the generally normal physical and mental examinations, and the typically normal to mildly restricted range of motion. Additionally, the mental limitations opined by Dr. Shafer, Ph.D., which are the same as stated above in the paragraph b criteria discussion, were consistent with the record. Specifically, the claimant's improved moods with medication, often normal psychological presentation upon examinations, and continued activities but occasional mild to moderate functional limitations. Dr. Anthoney, Ph. D., also provided mental findings, which were persuasive; however, they followed an older paragraph "b" criteria so they are given less weight than Dr. Shafer's. (Exhibits 9F-17F; 6E; 7E; l0E).

(AR at 19-20.) Thus, the ALJ assigned "some weight" to Dr. Shafer's opinions, but less weight to Dr. Anthoney's mental findings insofar as they followed the older paragraph B criteria.

### a.    *Claimant's Arguments*

Claimant argues that the ALJ "oddly" included an RFC limitation that Claimant could perform "complex work instructions and tasks at a [sic] SVP 4 level." (Doc. 12 at 6.) Claimant asserts that the ALJ was likely "shorthanding the 3-4 step tasks limitation suggested by the agency psychological consultants into an SVP 4 limitation—a limitation that allows for semiskilled work—which resulted in an RFC not supported by substantial evidence." (*Id.*) Claimant argues that inclusion of the SVP 4 limitation was an error because the limitation varies from the state agency psychological consultant opinions. (*Id.* (citing *Gann v. Berryhill*, 864 F.3d 947, 952-53 (8th Cir. 2017).) Claimant further asserts that inclusion of this limitation "does not make sense given his Paragraph B moderate findings and further suggests the ALJ lost the gist of the agency psychological consultant opinions in translation." (*Id.* (citing *Scott v. Berryhill*, 855 F.3d 853, 857-58

(8th Cir. 2017).)  Claimant also argues that it is not clear whether a limitation to tasks that have no more than 4 steps would impact the number of reasoning level 2 jobs available.  (Doc. 14 at 5.)[7]

In her reply brief, Claimant also makes the following argument:

> The ALJ plainly stated the Dr. Schafer's mental limitation opinions were consistent with the record, which in the parlance of hearing decisions would ordinarily mean the ALJ was intending to adopt Dr. Schafer's opinions absent some additional explanation. (See TR 20). That is recognized by Eighth Circuit caselaw. See *Gann v. Berryhill*, 864 F.3d 947, 953-54 (8th Cir. 2017); *Combs v. Berryhill*, 878 F.3d 642, 646-47 (8th Cir. 2017) (addressing an ALJ's failure [sic] fully and fairly develop the record while choosing one agency medical consultant opinion over another).

(Doc. 14 at 3.)

She then abruptly changes course and proffers the following explanation for the ALJ's RFC.

> The ALJ may have failed to even notice the actual mental limitation opinions by Dr. Schafer and Dr. Anthoney. . . . Such an error would be a mildly extraordinary error for an ALJ to make. The ALJ's discussion of the paragraph B findings in the RFC explanation section does suggest the possibility of confusion as to what mental limitations were being provided by the agency psychological consultants and suggests that the ALJ instead was thinking wrongly that the Paragraph B findings, which are quite vague when compared to specific RFC limitations, constituted the mental limitation opinons of the agency psychological consultants. *Cf. Scott v. Berryhill*, 855 F.3d 853, 857-58 (8th Cir. 2017) (discussing moderate deficiencies in concentration, persistence, or pace and concluding "a

---

[7] Claimant filed a Reply Brief in this case.  The moving party may "file a reply brief, not more than 5 pages in length, to assert newly-decided authority or to respond to new and unanticipated arguments made in the resistance."  LR 7(g).  Claimant's reply brief does not comply with LR 7(g).  Although Claimant's reply brief responds to arguments raised in the Commissioner's Resistance, the reply was overly-long and raised new arguments to which the Commissioner did not have the opportunity to respond.

sufficient hypothetical need not contain much more than the hypothetical at issue in *Newton*.")

The ALJ's hearing decision does not ever expressly recognize the 3-4 step task limitation or the working independently of others limitation suggested by Dr. Anthoney and Dr. Shafer, and while counsel's initial interpretation is that the ALJ did not further discuss the psychological consultant opinions of Dr. Anthoney and Dr. Shafer because the ALJ thought those opinions were being accounted for in the RFC determination, the Court may also determine the ALJ likely never recognized the actual mental limitation opinions of Dr. Anthoney and Dr. Shafer while weighing the opinion evidence in Ms. Engledow's case.

To the extent the ALJ may have simply not known how to read a disability determination explanation and never actually addressed the opinions of Dr. Shafer and Dr. Anthoney, such an error warrants remand. See 20 C.F.R. §§ 404.1527(b) (In determining whether you are disabled, we will always consider the medical opinions in your case record together with the rest of the relevant evidence we receive.") 404.1513a(c) ("When the Appeals Council makes a decision, it will consider prior administrative medical findings according to the same rules for considering prior administrative medical findings as administrative law judges follow under paragraph (b) of this section.") The ALJ's failure to notice the actual mental limitation opinions of the agency psychological consultants, if the ALJ mistakenly believed the only opinions provided were paragraph B listing-related opinions alone, led the ALJ to not fully and fairly develop the record.

(*Id.* at 3-5 (paragraph breaks added).)

Claimant thus asserts that because the ALJ posited a faulty hypothetical to the VE that included this limitation, no matter what the reason, remand is necessary for the ALJ to craft a new RFC and to posit a new hypothetical to the VE.

### b. Analysis

"Because claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the

workplace." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citation omitted). "However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* (citing *Meyers v. Colvin*, 721 F.3d 521, 526-27 (8th Cir. 2013) (affirming RFC without medical opinion evidence); *Perks v. Astrue*, 687 F.3d 1086, 1092-93 (8th Cir. 2012) (same)). "In the absence of medical opinion evidence, 'medical records prepared by the most relevant treating physicians can provide affirmative medical evidence supporting the ALJ's residual functional capacity findings.'" *Hensley*, 829 F.3d at 932 (internal brackets omitted) (quoting *Johnson v. Astrue*, 628 F.3d 991, 995 (8th Cir. 2011)).

The ALJ was not required to adopt the state agency consulting psychologists' limitation to 3-4 step tasks unless he found it was consistent with the record as a whole. To this end, Claimant's reliance on *Gann v. Berryhill,* 864 F.3d 947 (8th Cir. 2017) is misplaced. In *Gann*, the VE's testimony did not support the ALJ's step five finding because although the ALJ assigned significant weight to the opinions of the state agency consultants, the ALJ did not include the consultants' adaptive limitations in the hypothetical presented to the VE. 864 F.3d at 953-54. In the case at bar, the ALJ only assigned "some" weight to the opinions of the state agency consultants. Thus, he was not obligated to adopt all the limitations in Dr. Schafer's opinion into the RFC. Moreover, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise*, 641 F.3d at 927 (quoting *Schmidt v. Astrue,* 496 F.3d 833, 845 (7th Cir. 2007)); *Bantz v. Berryhill*, No. 17-CV-00002-LRR, 2018 WL 3078111, at *6 (N.D. Iowa Feb. 22, 2018) (ALJ not required to adopt all limitations in an opinion which was not assigned controlling weight), *R. & R. adopted,* 2018 WL 1522693 (N.D. Iowa Mar. 28, 2018).

Claimant's argument that inclusion of an SVP 4 level limitation "does not make sense given his Paragraph B moderate findings and further suggests the ALJ lost the gist

of the agency psychological consultant opinions in translation" seems to confuse the different purposes served by the different steps of the five-step analysis. The ALJ explained that his Paragraph B findings were *not* an RFC assessment and that "[t]he mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment." AR at 16; *Chrismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018) (explaining that different steps of the five-step process serve different purposes and the court's deferential standard of review requires court to harmonize findings when possible).

More importantly, it appears that Claimant misconstrues that ALJ's decision. In pertinent part, the ALJ stated that "the mental limitations opined by Dr. Shafer, Ph.D., *which are the same as stated above in the paragraph b criteria discussion*, were consistent with the record. Specifically, the claimant's improved moods with medication, often normal psychological presentation upon examinations, and continued activities but occasional mild to moderate functional limitations." (AR at 20 (emphasis added).) In context, the ALJ was not reiterating Dr. Shafer's Paragraph B findings, but was stating that Dr. Shafer's mental RFC limitations were the same as his Paragraph B findings. In his Mental RFC Assessment, Dr. Shafer found Claimant has the following limitations.

- Claimant had no understanding and memory limitations.
- Claimant had the following sustained concentration and persistence limitations:
  - Claimant was not significantly limited in her abilities to carry out very short and simple instructions; carry out detailed instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; to sustain an ordinary routine without special supervision; or to make simple work-related decisions.
  - Claimant was moderately limited in her abilities to maintain attention and concentration for extended periods; to work in coordination with or in proximity to others without being distracted by them; and to complete a normal workday and workweek without interruptions

from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

- Claimant had the following social interaction limitations:
  - Claimant was not significantly limited in her abilities to ask simple questions or request assistance or to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.
  - Claimant was moderately limited in her abilities to interact appropriately with the general public; to accept instructions and respond appropriately to criticism from supervisors; or to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
- Claimant had the following adaptive limitations:
  - Claimant was not significantly limited in her abilities to be aware of normal hazards and take appropriate precautions; to travel in unfamiliar places or use public transportation; or to set realistic goals or make plans independently of others.
  - Claimant was moderately impaired in her ability to respond appropriately to changes in the work setting.

(AR at 85-87.) Thus, as the ALJ concluded, Dr. Shafer's RFC limitations are the same as his Paragraph B limitations: Claimant had moderate limitations in her abilities to understand, remember, or apply information; interact with others; and to concentrate, persist, or maintain pace; and mild limitations in her ability to adapt or manage herself. (*Compare* AR 82 *with* AR 85-87.) This reading harmonizes the decision and avoids the "mildly extraordinary" reading Claimant fears. *See Chrismarich*, 888 F.3d at 980. Although the writing could have been plainer, "the ALJ's arguable deficiency in opinion-writing technique had no bearing on the outcome of [the] case and does not require remand." *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011) (internal quotation omitted). Thus, Claimant's argument that the ALJ somehow ignored Dr. Shafer's RFC assessment and relied on Dr. Shafer's Paragraph B assessment because he did not know how to read a disability determination explanation is without merit.

Furthermore, when the ALJ reviewed the entire record, including evidence not available to Dr. Shafer, he concluded that Claimant could perform tasks at the SVP 4 level. SVP 4 work is semi-skilled work. SSR 00-4p.[8] SVP work is work that takes over three months to six months to learn. O*NET OnLine, *O*Net Online Help*, https://www.onetonline.org/help/online/svp. The question thus becomes whether the record as a whole supports a finding that Claimant could perform semi-skilled work. The conclusion that Claimant can perform semi-skilled work is supported by the record as a whole. *See Biestek*, 239 S. Ct. at 1157 (courts should not apply categorical rules when reviewing agency decisions, but should decide whether the record contains sufficient evidence to support the agency's factual determinations).

The ALJ noted that Claimant's mental status examinations were generally normal. (AR at 18, 20.) The ALJ stated that although Claimant "occasionally presented with agitated, nervous, or tearful moods, and reported some insomnia/fatigue and difficulty concentrating, she typically had normal moods and affect, normal behavior, normal judgement and thought content, and no sleep disturbance." (*Id.* at 18 (citing AR 533, 537-38, 545, 548, 553, 558, 589, 598, 601, 606, 611, 685, 729, 875, 877-78, 917-18, 948, 977, 1034, 1048, 1090, 1129, 1167, 1279, 1291).) The ALJ also noted that Claimant's memory and cognition have been "normal and without impairment." (*Id.* at 18 (citing AR at 875, 878, 948, 1291); (*see also* AR at 918, 977 (treatment notes stating "normal cognition and memory"); 1279 (treatment note stating "short-term and long-term memory not impaired).)

Claimant has sought limited treatment for her mental health symptoms, obtaining her medication from her primary care provider and refusing to be treated by a psychiatrist

---

[8] I also note that the state agency psychological consultants found Claimant either not significantly limited or moderately limited in the categories relevant to the mental RFC assessment. (AR at 70-71; 85-87.) The two psychologists' findings were identical. (*Id.*)

33

or psychologist. (*Id.* at 18-19, 38.) Claimant testified that she saw male mental health providers as a child and found them "cold." (*Id.* at 39.) As the ALJ noted, "She states that she does not feel comfortable with male mental health doctors, but could not explain why she could not seek treatment from female mental health doctors." (*Id.* at 19.) At the time of the hearing, Claimant had seen a female counselor for about a year, however, and she testified that seeing the counselor was helping "a little." (*Id.* at 39.) In spite of the limited treatment Claimant receives for her mental health conditions, the treatments have significantly improved her moods. (*Id.* at 19, 946, 1165, 1291).) In a June 13, 2018 therapy treatment note, Claimant stated that things were going "really well;" said she felt "like [herself] again; gave herself an 8/10 quality of life rating, as opposed to the 1-2/10 rating she gave herself a year prior to this; and discussed, among other things, the healing that came with adequate medication. (*Id.* at 1291.) An impairment that is controlled with treatment or medication is not considered disabling. *Brace v. Astrue*, 578 F.3d. 882, 885 (8th Cir. 2009) (citations omitted).

The ALJ also noted that Claimant was never hospitalized for her mental health conditions and had periods of reporting that things were going well. (AR at 19 (citing AR 592, 1127, 1291).) Moreover, as the ALJ noted, many of Claimant's mental health symptoms appear to be tied to situational stressors such as family stress, finances, her physical health, and fright from watching movies. (*Id.* at 19, 454, 532, 592, 834, 875, 1127.) Situational stressors cannot provide the basis for a disability finding. *See Gates v. Astrue*, 627 F.3d 1080, 1082 (8th Cir. 2010); *Dunahoo v. Apfel*, 241 F.3d 1033, 1040 (8th Cir. 2001). Claimant also engages in a variety of activities. The ALJ stated that Claimant socializes with family, talks with friends on the phone daily, drives her stepdaughter to and from school every day, cooks occasionally, does laundry, grocery shops with her husband, takes care of pets, enjoys watching television, playing games on

her phone, coloring, reading, playing computer games, and quilting.[9] (*Id.* at 19 (citing Claimant's function reports; Claimant's stepfather's third party function report; opinion of consulting examining psychologist Randall Watkins, Ph.D.; treatment notes of Michelle Meyers, LISW).)

The ALJ also assessed the opinion evidence in the record. Randall Watkins, Ph.D. examined Claimant on December 29, 2016. (*Id.* at 591-93.) Dr. Watkins opined that Claimant

> appears quite capable of remembering and understanding instructions, procedures, and locations. Maintaining attention, concentration, and pace may be at times difficult due to her anxiety levels and fear of being in public places. She does seem to be friendly and capable of appropriate social interaction She was also capable of sustaining employment at Wal-Mart for eight years, until she endured a back injury. This client appears capable of interacting appropriately with supervisors co-workers, and the public, as well as use reasonable judgment and respond appropriately to changes in the workplace.

(*Id.* at 593.)

Although Dr. Watkins only examined Claimant once and his assessment was based primarily on Claimant's self-reports, the ALJ gave the opinion some weight because it was supported by Dr. Watkins's examination notes and the opinion was within Dr. Watkins's area of specialty. (*Id.* at 20.) More importantly, the ALJ found the opinion was "mostly consistent with the record as a whole, which indicated the claimant has some mild to moderate functional limitations due to her mental health, but she is overall capable of engaging in a light range of work. (*Id.* (citations omitted).)

Dr. Stephen Runde is a family practice physician who examined Claimant in conjunction with her worker's compensation claim and provided an opinion about

---

[9] Claimant stated she no longer has the energy to quilt or sew, even though she did list it as a hobby. (AR at 227.)

Claimant's mental health on February 26, 2013. (*Id.* at 454.) Dr. Runde diagnosed Claimant with "exogenous depression secondary to her work injury." (*Id.*) He stated that based on the information she provided, Claimant did not have a history of depression or other mental illness. (*Id.*) Dr. Runde thus opined that "it is more likely than not that Alison's depression is caused by the work injury to her back." (*Id.*) He prescribed Zoloft. (*Id.*) The ALJ gave the opinion little weight because it was limited to a one-time evaluation from significantly prior to Claimant's alleged onset of disability date, it was vague and did not include "any indication of what the claimant can still do despite her impairments or what her limitations are," it was written in response to a different disability program, and it was so remote from the relevant time period that it provided "little insight into the claimant's continued symptoms or limitations." (*Id.* at 20.)

Thus, Dr. Watkins's opinion, the only other meaningful opinion from an examining psychologist in the record seems to support the RFC. The instant case is similar to *Whited v. Colvin*, in which this Court affirmed the ALJ's decision to assign an RFC containing the following limitation to a claimant who had mild to moderate limitations in concentration, persistence or pace and social functioning: "[S]econdary to lapses in focus and concentration that would preclude the ability to sustain the type of complex tasks involved in skilled work, he is limited to semiskilled work; the claimant is limited to occasional work interaction with the general public." *Whited v. Colvin*, No. C13-4039-MWB, 2014 WL 69128, at *3, *6 (N.D. Iowa Jan. 9, 2014), *R. & R. adopted*, 2014 WL 1571321 (N.D. Iowa Apr. 18, 2014). *Whited* held that the ALJ properly accounted for the mild to moderate limitations identified in the areas of concentration, persistence or pace, and social functioning "by including limitations of semiskilled work secondary to lapses in focus and concentration and occasional interaction with the public." *Id.* at *11.

Similarly, in the case at bar, Claimant had mild to moderate limitations in concentration, persistence or pace and social functioning and the RFC limited her to "tasks at a SVP 4 [semiskilled] level; [she] can have occasional contact with coworkers, supervisors, and the general public; and [she] should not work with the general-public at a primary job duty." In fact, Claimant's RFC is more restrictive than the RFC in *Whited* because Claimant is limited not only in her contact with the general public, but also in her contact with coworkers and supervisors. Thus, to the extent Claimant argues that moderate limitations are at odds with semiskilled work, an argument that is nowhere near fully developed (*see* Doc. 12 at 6), that argument is without merit. *See also Aulston*, 277 F. App'x at 664-65.[10]

Thus, under our deferential standard of review, I find that the RFC is supported by substantial evidence in the record as a whole. The ALJ was not required to rely entirely on Dr. Schafer's opinion. *Martise*, 641 F.3d at 927. Furthermore, because the ALJ did not assign Dr. Schafer's opinion controlling weight, he was not obligated to adopt all of his limitations. *Bantz v. Berryhill*, No. 17-CV-00002-LRR, 2018 WL 3078111, at *6 (N.D. Iowa Feb. 22, 2018) (ALJ not required to adopt all limitations in opinion not assigned controlling weight), *R. & R. adopted,* 2018 WL 1522693 (N.D. Iowa Mar. 28, 2018).

Accordingly, I **recommend** the District Court find the ALJ did not err by including a "tasks at SVP 4 level" in the RFC. Even if I am incorrect and the District Court disagrees that substantial evidence on the record as a whole supports the ALJ's finding

---

[10] The RFC also appears to largely incorporate the state agency consulting psychologists' opinion that Claimant should work independently of others limitation that Claimant states is missing from the RFC. (Doc. 14 at 4.) The RFC limits Claimant to only occasional contact with coworkers, supervisors, and the general public. (AR at 16.) Claimant is also not to work with the general public as a primary job duty. (*Id.*)

that Claimant can perform SVP 4 level work, I further find that the ALJ's finding constitutes harmless error.

Although the ALJ determined that Claimant could perform SPV 4 (semiskilled) work, the jobs the ALJ relied upon at step five are all SVP 2 jobs. (AR at 23.) SVP 2 jobs are unskilled jobs. SSR 00-4p. *See DOT* 706.687-010, 1991 WL 679074 (assembler, production), *DOT* 559.687-074, 1991 WL 683797 (hand packager); *DOT* 729.684-054, 1991 WL 679729 (sub-assembler).

Claimant, however, argues in her reply brief that "it cannot be assumed that *every* Reasoning Level 2 job would be so basic that only 3-4 step tasks are required." (Doc. 14 at 5 (emphasis added).) Claimant takes particular issue with the sub-assembler job cited by the ALJ, the only job that does not have a loud noise rating. (*Id.*) Claimant's argument is based on the premise that the ALJ should have adopted the 3-4 step task limitation from Dr. Shafer's opinion into the RFC. As discussed above, the ALJ was not required to do so and, indeed, did not do so. Thus, Claimant's argument is moot. There is no 3-4 step limitation in the RFC. Claimant has no other objections to Claimant performing the sub-assembler job.

At the hearing, the VE not only testified that the sub-assembler job was an appropriate job for someone with Claimant's limitations, he also testified that without the limitation that Claimant should not work with the general public as a primary job duty, Claimant would be able to perform her past relevant work that was rated at SVP levels of 2 and 3. (AR at 22, 57-58.) The VE only stated Claimant could not perform her past relevant work when the limitation to no work with the general public was added as a primary job duty. (*Id.* at 58.) Thus, substantial evidence in the record supports the finding that Claimant can perform the SVP 2 sub-assembler job. Therefore, I **recommend** the District Court affirm the ALJ's decision on this issue.

*D.*     *Whether the ALJ Properly Evaluated Claimant's Subjective Complaints*

When a claimant suffers from a severe impairment, but the impairment does not meet or equal a disabling impairment listed in the regulations, the ALJ "will consider the impact of [the claimant's] impairment(s) and any related symptoms, including pain, on [the claimant's] residual functional capacity." 20 C.F.R. § 404.1529(d)(4). This determination involves a two-step process in which the ALJ first decides whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms and then evaluates the intensity and persistence of the claimant's symptoms. *Id.* § 404.1529(b),(c). When evaluating the claimant's subjective complaints during the second step, the ALJ considers the objective medical evidence, the claimant's work history, and evidence relating to the following factors ("the *Polaski* factors"): (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) [the claimant's] functional restrictions. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984); 20 C.F.R. § 404.1529(c)(3).[11] An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)).

After considering the factors and evidence, the ALJ determines the extent to which the claimant's symptoms affect the claimant's capacity to perform basic work activities. *Id.* § 404.1529(c)(4). The claimant's "symptoms, including pain, will be determined to

---

[11] The Code of Federal Regulations includes the additional factors of: (1) other treatment the claimant receives for pain relief; and (2) measures the claimant uses to relieve pain "(e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.)." 20 C.F.R. § 404.1529(c)(3)(v),(vi).

diminish [the claimant's] capacity for basic work activities to the extent that [the claimant's] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." *Id.*

### 1.    *Daily Activities*

Claimant relies on the same arguments she made related to her daily activities regarding Dr. Kim's opinion to argue that the ALJ did not properly evaluate her credibility.  (Doc. 12 at 12.)

To briefly recap, the ALJ assigned proper weight to Dr. Kim's opinion based on Claimant's self-reported lack of sitting and standing limitations and Claimant's activities. (AR at 17-18, 21, 228, 249.)  As the ALJ noted, Claimant helped her father clean out his home; routinely swam and walked for exercise; was a stay-at-home mother/caretaker who did household chores such as laundry (although I noted that she testified her husband carried full laundry baskets down to the basement for her (*Id.* at 54)); played video games; talked with friends daily; and shopped in stores with her husband. Of particular note in the pages cited by the ALJ are pages where Claimant told healthcare providers she was exercising at least 150 minutes-per-week and walking and swimming for exercise.  (*Id.* at 547, 556, 683, 974, 1031, 1045, 1089.)  These statements undermine Claimant's testimony that she has no energy to do chores or leave the house, and that she spends her days sleeping and lying on the couch watching television and playing games or looking at Facebook on her phone.  (*Id.* at 49-53; Doc. 12 at 11 (citing AR at 223-29).)  Although Claimant argued that helping her father clean his home caused her pain, the evidence showed that she improved with chiropractic care.   (AR at 1232.)  Thus, I concluded above, as I conclude here, that the ALJ's decision was not outside the acceptable zone of choice. *See Hacker*, 459 F.3d at 936.

## 2. *Objective Medical Evidence*

Claimant's only argument related to the ALJ's evaluation of the objective medical evidence in the record states the following:

> The ALJ's only other discussed *Polaski* factor as it related to Ms. Engledow's physical limitations has to do with the ALJ's interpretation of the objective evidence. (See TR 17-18). As *Polaski v. Heckler* explained, The adjudicator may not disregard a claimant's subjective complaints solely because the objective medical evidence does not fully support them. The absence of an objective medical basis which supports the degree of severity of subjective complaints alleged is just on [sic] factor to be considered in evaluating the credibility of testimony and complaints. *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). As explained in the prior argument, Ms. Engledow's claim has always been one that ties her physical and mental limitations and their limitation impacts together. (See TR 206). With such a claim, the ALJ should have explored to what extent Ms. Engledow's pain was exacerbated by her psychological impairments, which would explain to some degree her normal findings on exam. See *Delrosa v. Sullivan*, 922 F.2d 480, 485-86 (8th Cir. 1991); *Nowling v. Colvin*, 813 F.3d 1110, 1113-14 (8th Cir. 2016) (discussing conversion disorders and the disconnect between clinical findings and subjective limitations).

(Doc. 12 at 13.) The page of the record Claimant cites in the above argument is from Claimant's Disability Report. (AR at 206.) Claimant told SSA she was unable to continue working "due to depression and anxiety disease affecting my work and hurting my back due my depressive moods." (*Id.*)

As discussed in part III.B.2, *supra*, discussing Dr. Kim's opinion, Claimant also cited a page from Dr. Mathew's July 2014 worker's compensation opinion when she proffered the same argument in support of Dr. Kim's opinion. (AR at 523.) However, for the reasons discussed above, that single page does not persuade me that the ALJ's decision on this issue was not supported by substantial evidence on the record as a whole. Furthermore, as previously discussed, the ALJ considered the combined effects of Claimant's impairments. Moreover, as discussed above, *Delrosa* is inapposite to the case

at bar. 922 F.2d at 484-85. Finally, *Nowling v. Colvin* can be distinguished from this case because the claimant in *Nowling* had a conversion disorder that by its very nature may cause a "disconnect between the actual severity of symptoms demonstrated by clinical evidence and the way the applicant subjectively perceives the symptoms." 813 F.3d 1110, 1114 (8th Cir. 2016). Claimant filed her claim based on anxiety and depression and the ALJ found she had depression and an affective disorder, not a conversion disorder, which is a unique mental health condition. (AR at 14, 206.)

### 3. *Conservative Treatment History*

Claimant argues that the ALJ erred by relying on her conservative treatment history and lack of surgery to discount her claims because she received consistent treatment for her back impairment. Claimant notes that she 1) went through a worker's compensation program, 2) had MRI and neurosurgery referrals, and 3) had regular chiropractic treatment from at least June 2017 to June 2018. (Doc. 12 at 13 (citing *Mikarovski v. Saul*, No. 18-cv-90-LTS-KEM, 2019 WL 8112167, at *8 (N.D. Iowa Dec. 30, 2019), *R. & R. adopted*, 2020 WL 362639 (N.D. Iowa January 21, 2020).)

The ALJ never stated that Claimant did not receive on-going treatment, only that Claimant received conservative treatment. As the ALJ noted, the treatment Claimant received for her injury when she was seeking worker's compensation was mostly years before her alleged onset of disability date and is therefore largely irrelevant to the current discussion. While it is true that Claimant had an MRI and a neurosurgery consultation, as the ALJ found, Claimant's MRI and other radiographic evidence showed generally mild changes in Claimant's back. (AR at 17 (citing AR at 574, 1267).) The neurosurgeon to whom Claimant was referred did not recommend surgery. (AR at 18, 556.) And, as noted by the ALJ and discussed above, Claimant responded well to chiropractic treatment, even recovering relatively quickly from an injury she received when helping her father move. (AR at 18 (citing Ex. 16F (AR 1208-71)); part III.B.2, *supra*. Finally,

Claimant cites *Mikarovski* for the proposition that "not requiring surgery does not present a good reason for finding Ms. Engledow was not credibly reporting her limitations." (Doc. 13 at 12.) I agree. However, this is not a case in which the ALJ relied too heavily on the lack of surgery to support his conclusion, as was the case in *Mikarovski*. 2019 WL 8112167, at *8. Rather, the ALJ merely mentioned that a neurosurgeon did not recommend surgery in one sentence of an entire paragraph discussing Claimant's conservative treatment for her back impairment. (AR at 18.) The ALJ spent more space discussing Claimant's chiropractic treatment and the other things that have been recommended to her for pain relief than he did discussing Claimant's lack of surgery. (*Id.*) In addition, Claimant did not have the extensive treatment record that the claimant did in *Mikarovski*. *Compare* 2019 WL 8112167, at *8 *and* AR at 17-18. Thus, this case can be distinguished from *Mikarovski* on the facts.

### 4. Conclusion

For the above reasons, I **recommend** the District Court affirm the ALJ's decision regarding Claimant's subjective complaints.

## IV. CONCLUSION

For the foregoing reasons, I respectfully recommend that the District Court **affirm the decision of the ALJ.**

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to *de novo* review by the District Court of any portion of the Report and Recommendation as

well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 16th day of February, 2021.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa