IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

ALISON J. ENGLEDOW,

        Plaintiff,

vs.

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.

No. 20-CV-4-LRR

**ORDER**

*I.*   *INTRODUCTION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*1*
*II.*  *RELEVANT PROCEDURAL HISTORY.* . . . . . . . . . . . . . . . . . . . . . .*2*
*III.* *STANDARD OF REVIEW.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*2*
    *A.*  *Review of Final Decision.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*2*
    *B.*  *Review of Report and Recommendation.* . . . . . . . . . . . . . . . . . . .*3*
*IV.*  *OBJECTIONS.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*5*
    *A.*  *Vocational Expert Testimony.* . . . . . . . . . . . . . . . . . . . . . . . . . .*6*
    *B.*  *Dr. Kim's Opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*7*
    *C.*  *Credibility Determination.* . . . . . . . . . . . . . . . . . . . . . . . . . . . .*9*
    *D.*  *Dr. Mathew's Opinions.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*13*
    *E.*  *RFC Assessment.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*15*
*V.*   *CONCLUSION.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .*16*

*I. INTRODUCTION*

The matter before the court is Plaintiff Alison J. Engledow's Objections (docket no. 17) to United States Magistrate Judge Mark A. Roberts's Report and Recommendation (docket no. 16), which recommends that the court affirm Defendant Commissioner of Social Security's ("Commissioner") final decision to deny disability benefits to Engledow.

## II. RELEVANT PROCEDURAL HISTORY

On January 13, 2020, Engledow filed a Complaint (docket no. 3), seeking judicial review of the Commissioner's final decision denying Engledow's application for Title II disability insurance benefits. On March 24, 2020, the Commissioner filed an Answer (docket no. 8). On June 23, 2020, Engledow filed the Plaintiff's Brief (docket no. 12). On July 10, 2020, the Commissioner filed the Defendant's Brief (docket no. 13). On August 3, 2020, Engledow filed the Reply Brief (docket no. 14). On August 4, 2020, the matter was referred to Judge Roberts for issuance of a report and recommendation. On February 16, 2021, Judge Roberts issued the Report and Recommendation. On March 2, 2021, Engledow filed the Objections. On March 8, 2021, the Commissioner filed a general Response to the Objections (docket no. 18). The matter is fully submitted and ready for decision.

## III. STANDARD OF REVIEW

### A. Review of Final Decision

The Commissioner's final determination not to award disability insurance benefits is subject to judicial review. *See* 42 U.S.C. § 405(g). The court has the power to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id*. The Commissioner's factual findings shall be conclusive "if supported by substantial evidence." *Id*. "The court 'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quoting *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006)). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a decision." *Fentress v. Berryhill*, 854 F.3d 1016, 1019-20 (8th Cir. 2017) (quoting *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007)).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the [administrative law judge ("ALJ")], but

2

[it] do[es] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress*, 854 F.3d at 1020; *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (providing that review of the Commissioner's decision "extends beyond examining the record to find substantial evidence in support of the [Commissioner's] decision" and noting that the court must also "consider evidence in the record that fairly detracts from that decision"). The Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is "something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."

*Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991)). The court "will not disturb the denial of benefits so long as the ALJ's decision falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011) (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "An ALJ's decision is not outside the zone of choice simply because [the court] might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley*, 528 F.3d at 1115). Therefore, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

### B. *Review of Report and Recommendation*

The standard of review to be applied by the court to a report and recommendation of a magistrate judge is established by statute:

3

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.

28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (providing that, when a party properly objects to a report and recommendation on a dispositive motion, a district court must review de novo the magistrate judge's recommendation). The Eighth Circuit has repeatedly held that it is reversible error for a district court to fail to conduct a de novo review of a magistrate judge's report and recommendation when such review is required. *See, e.g.*, *United States v. Lothridge*, 324 F.3d 599, 600 (8th Cir. 2003); *Hosna v. Groose*, 80 F.3d 298, 306 (8th Cir. 1996); *Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995); *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). The statute governing review provides only for de novo review of "those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). When a party fails to object to any portion of a magistrate judge's report and recommendation, he or she waives the right to de novo review. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The United States Supreme Court has stated that "[t]here is no indication that Congress, in enacting § 636(b)(1)[ ], intended to require a district judge to review a magistrate's report to which no objections are filed." *Thomas v. Arn*, 474 U.S. 140, 152 (1985). However, "while the statute does not require the judge to review an issue de novo if no objections are filed, it does not preclude further review by the district judge, sua sponte or at the request of a party, under de novo or any other standard." *Id.* at 154.

The Eighth Circuit has suggested that in order to trigger de novo review, objections to a magistrate judge's conclusions must be specific. *See Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989); *see also Belk*, 15 F.3d at 815 (noting that some circuits do not apply de novo review when a party makes only general and conclusory objections to a magistrate judge's report and recommendation and finding that *Branch* indicates the Eighth Circuit's

4

"approval of such an exception"); *Thompson v. Nix*, 897 F.2d 356, 357-58 (8th Cir. 1990) (reminding the parties that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). The Sixth Circuit Court of Appeals has explained the approach as follows:

> A general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act. We would hardly countenance an appellant's brief simply objecting to the district court's determination without explaining the source of the error. We should not permit appellants to do the same to the district court reviewing the magistrate's report.

*Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 509 (6th Cir. 1991); *see also Goney v. Clark*, 749 F.2d 5, 6 n.1 (3d Cir. 1984) (finding that "plaintiff's objections lacked the specificity necessary to trigger de novo review"); *Whited v. Colvin*, No. C 13-4039-MWB, 2014 WL 1571321, at *2-3 (N.D. Iowa Apr. 18, 2014) (concluding that, because the plaintiff "offer[ed] nothing more than a conclusory objection to . . . [the report and recommendation] . . . [the plaintiff's] objection [should be treated] as if he had not objected at all"); *Banta Corp. v. Hunter Publ'g Ltd. P'ship*, 915 F. Supp. 80, 81 (E.D. Wis. 1995) ("De novo review of a magistrate judge's recommendation is required only for those portions of the recommendation for which particularized objections, accompanied by legal authority and argument in support of the objections, are made.").

## IV. OBJECTIONS

In the Objections, Engledow argues that Judge Roberts erred: (1) in finding that the ALJ properly relied on the testimony of the vocational expert; (2) in finding that the ALJ properly determined Engledow's residual functional capacity ("RFC") assessment; (3) in

5

finding that the ALJ provided good reasons for discounting the opinion of Engledow's treating physician, Dr. Kim; (4) in concluding that the ALJ's credibility determination is supported by substantial evidence; and (5) in finding that the ALJ provided good reasons for the weight afforded to the opinions of Dr. Mathew, an examining physician. *See* Objections at 2-9. After conducting a de novo review of the objected-to portions of the Report and Recommendation and the Administrative Record ("AR") (docket nos. 9-1 through 9-17), the court will overrule the Objections.

### A. *Vocational Expert Testimony*

While not entirely clear from the Objections, it appears that the issue in Engledow's first objection concerns an inconsistency between the vocational expert's testimony and ALJ's RFC and hypothetical question to the vocational expert. *See* Objections at 2; Report and Recommendation at 8-9. The issue appears to be that the ALJ's RFC included a limitation on working at moderate noise levels, but two of the three jobs that the vocational expert identified required the ability to work at loud noise levels. *See* Report and Recommendation at 9. Engledow states that, "[g]enerally, this argument was conceded to be correct by the Commissioner and recognized as correct by the [Report and Recommendation]." Objections at 2. Engledow maintains, however, that "[t]he rest of the arguments generally deal with whether the ALJ's error was harmful given the remaining job, the sub-assembler job, only called for the ability to handle 'Moderate' noise levels. . . . Engledow objects to the [Report and Recommendation's] conclusion the ALJ's SSR 00-4p error was harmless given the other issues argued in this case that show it was not."[1] *Id.* at 2-3. Engledow's argument is unclear, as it is both conclusory and lacks specificity. As such, Engledow's argument is

---

[1] SSR 00-4p provides in pertinent part that "before relying on [vocational expert] testimony or . . . evidence to support a disability determination or decision, our adjudicators must: Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by [vocational experts] . . . and information in the Dictionary of Occupational Titles . . . and [e]xplain in the determination or decision how any conflict that has been identified was resolved." *Id.*

6

noncompliant with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A. (emphasis added). Moreover, Engledow's failure to object to Judge Roberts's determination regarding the vocational expert's testimony with any specificity means that Engledow has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation").

Furthermore, upon review of the Report and Recommendation, the court notes that Judge Roberts did not make a harmless error determination. Instead, Judge Roberts thoroughly addressed the issue and properly determined that:

> "[M]istaken" [vocational expert] recommendations do not necessarily "devalue" the rest of the [vocational expert's] opinion. *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014). An ALJ may rely on [vocational expert] testimony as long as the [vocational expert] identified other work that claimant can perform that satisfies the claimant's RFC. *See id.* . . . Here, the [vocational expert] identified the job of sub-assembler (AR at 23, 59), which involves only moderate noise levels. . . . There are 90,000 sub-assembler jobs in the national economy (AT 23, 59.) This is a significant number of jobs. . . . Thus, I recommend the District Court affirm the ALJ's decision on this issue.

Report and Recommendation at 9. The court finds that Judge Roberts correctly considered this issue and finds no error with the Report and Recommendation. Accordingly, the court declines de novo review of this issue and adopts the findings of the Report and Recommendation.

### B. Dr. Kim's Opinions

Engledow argues that the ALJ failed to properly weigh the opinions provided by her treating physician, Dr. Sunny Kim. *See* Objections at 5-9.

"The opinion of a treating physician is generally afforded 'controlling weight if that

7

opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record.'" *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017) (quoting *Wildman*, 596 F.3d at 964). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *See Hamilton v. Astrue*, 518 F.3d 607, 610 (8th Cir. 2008). When an ALJ discounts a treating physician's opinion, he or she "must 'give good reasons' for doing so." *Chesser*, 858 F.3d at 1164 (quoting *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012)). "Good reasons for assigning lesser weight to the opinion of a treating source exist where 'the treating physician's opinions are themselves inconsistent,' *Cruze* [*v. Chater*], 85 F.3d [1320,] 1325 [(8th Cir. 1996)], or where 'other medical assessments are supported by better or more thorough medical evidence,' *Prosch* [*v. Apfel*], 201 F.3d [1010,] 1012 [(8th Cir. 2000)]." *Id.*

The ALJ addressed Dr. Kim's opinions as follows:

> Dr. Sunny Kim, M.D. also provided an opinion from 2013 (Exhibit 4F). Dr. Kim's opinion is given little weight. Dr. Kim's opinion was in response to an unknown letter requesting specific information. Further, it was pertaining to a different disability program, [Engledow's] worker's compensation case. Several of the statements are less restrictive than the residual functional capacity stated above. Additionally, it was made significantly prior to the alleged onset of disability about an injury that occurred even more remotely than that. Finally, the more restrictive recommendations are inconsistent with the record as a whole. Specifically, with the mild-to-moderate imaging, her normal gait, her typically normal range of motion, her self-reported lack of limitation with standing and sitting, and her continued activities (Exhibits 7E; 10E, 9F-17F).

AR at 21.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Kim. The ALJ justifiably discounted Dr. Kim's opinions because Dr. Kim's opinions were "inconsistent or contrary to the medical evidence as a whole." *Aguiniga v. Colvin*, 833 F.3d 896, 901 (8th Cir. 2016) (quoting *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011)). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

### *C. Credibility Determination*

Here, Engledow offers a purely conclusory argument and states only that she "continues to rely on her principal briefing." Objections at 9. The court presumes that Engledow objects to Judge Roberts's recommendation that the court "affirm the ALJ's decision regarding [Engledow'] subjective complaints." Report and Recommendation at 43. Initially, the court notes that Engledow's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A. (emphasis added). Moreover, Engledow's failure to object to Judge Roberts's findings regarding the ALJ's RFC determination with any specificity means that Engledow has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, in this instance, the court will review the ALJ's credibility determination de novo. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

When assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to

9

the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance*, 860 F.3d at 1120. In *Polaski*, the Eighth Circuit stated that:

> [t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322. The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). If an ALJ discounts a claimant's subjective complaints, he or she is required to "make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the *Polaski* factors." *Renstrom*, 680 F.3d at 1066 (quoting *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010)); *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (stating that an ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found'" (quoting *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003))). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *See Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we

will normally defer to the ALJ's credibility determination."). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

In this case, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that [Engledow's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. . . .

AR at 17. Here, the ALJ thoroughly reviewed Engledow's physical impairments, concluding that, "[i]n limiting [Engledow] to light work with additional postural and environmental limitations, the undersigned has adequately accounted for her degenerative disc disease and the mild to moderate objective imaging findings." *Id.* The ALJ also found that:

> [Engledow] has had generally normal physical examinations. Her range of motion in the musculoskeletal system was typically normal, with no edema, and usually no myalgias or arthralgias. (Exhibits 10F/2, 3, 7-8, 15, 19, 23, 27, 38; 15F/82, 124, 146, 179, 189, 270, 300, 330, 387, 443, 483). . . . She has not been noted to have any limitations with her gait, a straight leg raising test was negative, and she's been able to continue engaging in various physical activities such as helping clean her father's home out, routinely swimming and walking for exercise, being a stay-at-home mother/caretaker, doing household chores such as laundry, and doing manipulative activities such as quilting (Exhibits 10F/17, 26; 15F/36, 81, 228, 327, 384, 398, 442, 481; 16F; 17F/8, 20; 13F; Hearing Testimony). The largely normal objective exam findings and activities of daily living are inconsistent with disabling limitations.

*Id.* at 17-18. The ALJ also discussed Engledow's "generally conservative" treatment. *See id.* at 18. The ALJ considered Engledow's asthma, but found that "the evidence indicated she is able to manage her asthma with her inhalers." *Id.* The ALJ also noted that "[s]he

11

typically had normal pulmonary, respiratory, and chest examinations." *Id.* Further, the ALJ thoroughly addressed Engledow's obesity and determined that "limiting [her] to light work with additional postural and environmental limitations, the undersigned has adequately accounted for her asthma and obesity." *Id.* The ALJ also thoroughly addressed Engledow's mental health impairments. *See id.* Specifically, the ALJ determined that Engledow "typically had normal moods and affect, normal behavior, normal judgment and thought content, and no sleep disturbance" and "sought limited treatment for her mental health symptoms." *Id.* at 18-19. Finally, the ALJ addressed Engledow's activities of daily living:

> Despite her impairments, [Engledow] has been able to engage in several types of activities. She lives with her husband and step-daughter. She socializes with family and talks with friends on the phone. She can drive her step-daughter to school every day and be a stay-at-home mother. She can cook occasionally, do laundry, grocery shop with her husband, and take care of household pets. She enjoys watching television, playing on her phone, quilting, coloring, reading; and plays computer games. (Exhibits 17F; 12F; 10E, 7E, 6E; Hearing Testimony). Overall, the evidence does not indicate [Engledow] would be unable to engage in work activity within the residual functional capacity above.

*Id.* at 19.

It is clear from the ALJ's decision that he thoroughly considered and discussed Engledow's treatment history, medical history, functional restrictions, activities of daily living and use of medications in making his credibility determination. Thus, having reviewed the entire record, the court finds that the ALJ adequately considered and addressed the *Polaski* factors in determining that Engledow's subjective allegations of disability were not credible. *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (noting that an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints). Therefore, because the ALJ seriously considered, but for good reasons explicitly discredited, Engledow's subjective complaints, the court will not disturb the ALJ's credibility

12

determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

### D. Dr. Mathew's Opinions

Here, again, Engledow offers a purely conclusory argument and states generally that she "continues to rely on her principal briefing." Objections at 9. Additionally, Engledow asserts that, because the ALJ's reasoning for discounting Dr. Kim's opinions is similar to the ALJ's reasoning for discounting Dr. Mathew's opinions, the same argument applies. *See id*. The court presumes that Engledow objects to Judge Roberts's recommendation that the court affirm the ALJ's decision regarding Dr. Mathew's opinions. *See generally* Report and Recommendation at 24-25. Initially, the court notes that Engledow's argument fails to comply with the Local Rules, which require "[a] party who objects to . . . a magistrate judge's report and recommendation" to "file *specific*, written objections to the . . . report and recommendation." LR 72A. (emphasis added). Moreover, Engledow's failure to object to Judge Roberts's findings regarding the ALJ's assessment of Dr. Mathew's opinions with any specificity means that Engledow has waived her right to de novo review of this issue. *See Thompson*, 897 F.2d at 357-58 (providing that "objections must be . . . specific to trigger de novo review by the [d]istrict [c]ourt of any portion of the magistrate's report and recommendation"). Nevertheless, in this instance, the court shall review the ALJ's credibility determination de novo. *See Thomas*, 474 U.S. at 154 (providing that, while de novo review is not required when a party fails to object to a magistrate judge's report and recommendation, the court may apply "de novo or any other standard [of review]").

An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 416.927(c). If the medical opinion is not from a treating source, then the ALJ considers the following factors for determining the weight to be given to the non-treating medical opinion: "(1) examining relationship, (2) treating relationship,

13

(3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. § 416.927(c)(1)-(6)). "It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).

In his decision, the ALJ addressed Dr. Mathew's opinions as follows:

> Dr. Stanley Mathew, M.D. provided an opinion also pertaining to [Engledow's] worker's compensation case in July 2014. (Exhibit 8F). Dr. Mathew's opinion is given little weight. His opinion was pertaining to a different program's standards for disability and pertains to injuries from significantly prior to the alleged onset date of disability. However, many of his recommended restrictions are less restrictive than as stated in the residual functional capacity. Regardless, the more restrictive recommendations are inconsistent with the record as a whole. Specifically, with the mild-to-moderate imaging, her normal gait, her typically normal range of motion, her self-reported lack of limitation with standing and sitting, and her continued activities (Exhibits 7E; 10E, 9F-17F).

AR at 21.

Having reviewed the entire record, the court finds that the ALJ properly considered and weighed the opinion evidence provided by Dr. Mathew. The ALJ articulated good reasons for discounting the opinions of Dr. Mathew, and for finding the opinions to be inconsistent with the record as a whole. *See Wagner*, 499 F.3d at 848; *Kirby*, 500 F.3d at 709 (providing that an ALJ is entitled to give less weight to a medical source opinion where the opinion is based on a claimant's subjective complaints rather than on objective medical evidence). Even if inconsistent conclusions could be drawn on this issue, the court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. Accordingly, the court will overrule this objection.

14

### E. *RFC Assessment*

Engledow argues that the ALJ failed to properly determine her RFC assessment. *See generally* Objections at 3-5. Specifically, Engledow asserts that the ALJ relied on opinions from non-examining Social Security Administration ("SSA") doctors that would limit her to performing 3-4 step tasks. While it is not entirely clear from the Objections, it appears that Engledow is arguing that the RFC assessment, which states she is capable of "carry[ing] out moderately complex work instructions and tasks at a SVP 4 level" is inconsistent with the opinions of the non-examining doctors. *See id.*

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and vocational factors such as age, education and work experience. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998). The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *See Combs v. Berryhill*, 878 F.3d 642, 646 (8th Cir. 2017). Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Id.* (alteration in original) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace." *Id.* (quoting *Steed v. Astrue*, 524 F.3d 872, 875 (8th Cir. 2008)).

Additionally, an ALJ "has a duty to fully and fairly develop the evidentiary record." *Byes v. Astrue*, 687 F.3d 913, 915-16 (8th Cir. 2012); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir.

15

2008).

As the Report and Recommendation points out, in weighing the opinions of the non-examining consultative physicians, the ALJ gave them "some weight." *See* Report and Recommendation at 26-27; AR at 19-20. Further, the Report and Recommendation also points out that, by only assigning "some weight" to the opinions of the non-examining agency doctors, the ALJ "was not obligated to adopt all the limitations in Dr. Shafer's opinion into the RFC." Report and Recommendation at 30. Judge Roberts is correct.

Turning to the ALJ's overall RFC assessment, it is clear that the ALJ thoroughly addressed and considered Engledow's medical and treatment history. *See* AR at 17-21 (providing a thorough discussion of Engledow's overall medical history and treatment and the opinion evidence of various examining and non-examining doctors). The ALJ also properly considered and thoroughly addressed Engledow's subjective allegations of disability in making his overall disability determination, including determining Engledow's RFC. *See id.* at 17-19 (providing a thorough review of Engledow's subjective allegations of disability). Therefore, having reviewed the entire record, the court finds that the ALJ properly considered Engledow's medical records, observations of treating physicians and Engledow's own description of her limitations in making the RFC assessment for Engledow. *See id.* at 17-21 (providing a thorough discussion of the relevant evidence for making a proper RFC determination); *see also Combs*, 878 F.3d at 646 (explaining what constitutes relevant evidence for assessing a claimant's RFC). Furthermore, the court finds that the ALJ's decision is based on a fully and fairly developed record. *See Byes*, 687 F.3d at 915-16. Because the ALJ considered the medical evidence as a whole, the court concludes that the ALJ made a proper RFC determination supported by some medical evidence. *See Combs*, 878 F.3d at 646; *Guilliams*, 393 F.3d at 803. Accordingly, the court will overrule the objection.

## *V. CONCLUSION*

In light of the foregoing, it is hereby **ORDERED**:

(1) The Objections (docket no. 17) are **OVERRULED**;

(2) The Report and Recommendation (docket no. 16) is **ADOPTED** and the final decision of the Commissioner is **AFFIRMED**; and

(3) The Complaint (docket no. 3) is **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**DATED** this 10th day of March, 2021.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA